IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY NICOLE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-513-SLP |
| ) | |
| JASON HARRIS, in his individual ) | |
| capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is Defendant Leslie Shelton-Denley's Motion to Dismiss and Brief in Support [Doc. No. 13]. Plaintiff, Amy Johnson, has responded [Doc. No. 14], and Ms. Shelton-Denley has replied [Doc. No. 15]. The matter is fully briefed and ready for determination. For the reasons that follow, the Motion is GRANTED.

**I.   Background**

Ms. Johnson, appearing pro se, filed this action on June 9, 2023. Compl. [Doc. No. 1]. Pursuant to 42 U.S.C. § 1983, she asserts two claims against all the Defendants in this action: one for unlawful seizure in violation of the Fourth Amendment, and another for excessive force in violation of the Eighth Amendment. *Id.* at 1, 8-10. Defendants Jason Harris and Nick Crauthers filed Answers, [Doc. Nos. 11, 12], and only Ms. Shelton-Denley's Motion is presently at issue. Ms. Shelton-Denley asserts she is entitled to qualified immunity on Ms. Johnson's claims against her. *See* Mot. [Doc. No. 13] at 7-8. The Court agrees.

## II.     Governing Standard

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Where the Court reviews the sufficiency of a pro se complaint, it applies the same legal standards, but liberally construes the complaint's allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). The Court cannot, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And it is still true that "the court need accept as true only the plaintiff's well-pleaded factual contentions, not [her] conclusory allegations." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "This is so because a pro se plaintiff requires no special legal

training to recount the facts surrounding [her] alleged injury, and [s]he must provide such facts if the court is to determine whether [s]he makes out a claim on which relief can be granted." *Id.*

### III. Factual Allegations of the Complaint[1]

Ms. Johnson's contact with law enforcement occurred after she called 911 to report that she found her father nonresponsive and potentially deceased inside an RV trailer where he resided in Elk City, Oklahoma. *See* Compl. [Doc. No. 1] ¶ 13. Two paramedics arrived, and Ms. Johnson directed them toward her father's body. *Id.* ¶ 14. Ms. Johnson began recording the interactions on her cell phone after potentially hearing one of the paramedics snicker. *Id.*

Officers Crauthers and Harris arrived about five minutes later. *Id.* ¶ 15. They approached Ms. Johnson near the RV and demanded that she leave the area. *Id.* Ms. Johnson expressed her desire to remain with her father, and further stated she was recording the interaction. *Id.* ¶¶ 15-16. Officer Crauthers told Ms. Johnson to step aside, and then assaulted Ms. Johnson while she was attempting to comply, slamming her face down into the parking lot and causing significant injuries. *Id.* ¶ 26. Officer Crauthers then placed his knee on Ms. Johnson's neck, and a struggle ensued while he attempted to place her in handcuffs. *Id.* Ms. Johnson exclaimed that she was in pain and that she could not breathe, but Officer Crauthers continued to press upon her upper body to the point that she began to lose consciousness. *Id.*

---

[1] The Court views the factual allegations of the Complaint in the light most favorable to Plaintiff as the non-moving party. *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Officer Harris approached to assist and placed Ms. Johnson in handcuffs. *Id.* ¶ 16. The officers placed Ms. Johnson in the back of a police car, where she remained for approximately three and a half hours. *Id.* ¶ 17. During that time, she was able to see her father's dead body and was denied any water, food, and the ability to use the restroom. *Id.* ¶ 17.

After that, the officers took Ms. Johnson to the Elk City Police Department. *Id.* ¶ 18. There, Ms. Shelton-Denley and Officer Harris began the booking process. *Id.* Ms. Shelton-Denley told Ms. Johnson to remove her jewelry, then took mugshots and began gathering fingerprints. *Id.* ¶ 19. Ms. Johnson's family members arrived and demanded that Officer Harris and Ms. Shelton-Denley release her because she had not committed a crime. *Id.* Officer Harris and Ms. Shelton-Denley refused to release her. *Id.*

Ms. Johnson's family members then told Officer Harris and Ms. Shelton-Denley that they would initiate legal action if the department continued its refusal to release Ms. Johnson. *Id.* Ms. Shelton-Denley called an "unknown supervisor." *Id.* ¶ 20. After a short conversation with that individual, Ms. Shelton-Denley confirmed Ms. Johnson should be released. *Id.* Ms. Shelton-Denley and Officer Harris then returned Ms. Johnson's belongings and released her from custody. *Id.*

**IV.   Discussion**

Although asserted at the end of Ms. Shelton-Denley's Motion, qualified immunity provides the governing framework for the Court's analysis. *See Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022) ("[w]hen a § 1983 defendant raises qualified immunity . . . the burden shifts to the plaintiff to establish both prongs of the defense."); *see also Bledsoe v.*

4

*Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) ("[w]here, as here, defendants moved for dismissal of § 1983 claims under Rule 12(b)(6) based on qualified immunity, there is 'a presumption that the defendant is immune from suit.'" (citation omitted)).

"When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  At this stage, a plaintiff "must allege sufficient facts that show—when taken as true—the defendant plausibly violated [her] constitutional rights, which were clearly established at the time of violation." *Hernandez v. Ridley*, 734 F.3d 1254, 1258 (10th Cir. 2013) (citation omitted).

As to the second prong, Ms. Johnson must identify "clearly established" law that would have notified Ms. Shelton-Denley her actions were unlawful. *See Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1202 n.3 (10th Cir. 2017).  Ms. Johnson may show the law to be "clearly established" by citing an on-point Supreme Court or Tenth Circuit decision, or by showing "the clearly established weight of authority from other courts . . . have found the law to be" as she maintains. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (internal quotation marks and citation omitted).  An on-point decision means the precedent is "particularized to the facts"—that it "involves materially similar facts" to the case at hand. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general

proposition." (internal quotation marks and citations omitted)). In other words, on-point precedent cannot define a right at "a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). There does not have to be "a case directly on point, but existing precedent [nonetheless] must have placed the statutory or constitutional question beyond debate." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021) (quoting *al-Kidd*, 563 U.S. at 741).

### A. Unlawful Seizure

Ms. Johnson contends Ms. Shelton-Denley may be held liable for a Fourth Amendment violation based on a failure to intervene in the unlawful arrest made by Officers Harris and Crauthers.[2] Resp. [Doc. No. 14] at 2-6. As set forth below, however, Ms. Johnson has not met her burden to show Ms. Shelton-Denley violated clearly established law. *See Washington*, 847 F.3d at 1202 n.3.

Ms. Johnson's argument is based on a block quote from the Tenth Circuit's discussion in *Bledsoe v. Carreno*, 53 F.4th 589, 616-17 (10th Cir. 2022). There, the court recognized:

> [A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence . . . A plaintiff states a constitutional violation in the form of failure to intervene by alleging that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so.

---

[2] Ms. Johnson relatedly claims Ms. Shelton-Denley "failed to report" the constitutional violations, but she cites no authority and wholly fails to develop this argument. *Id.* All the cases she cites relate to duty to intervene, and the Court cannot construct or further develop this argument for her.

6

*Id.* at 616 (citations omitted). The court held "a failure-to-intervene claim is not limited to excessive force claims, but can involve other underlying constitutional violations." *Id.* at 617 (finding failure to intervene could apply to claims for alleged fabrication of evidence, suppression of exculpatory evidence, and for malicious arrest, prosecution, and conviction without probable cause). The court cited a prior unpublished decision where it recognized a failure to intervene claim in the context of an unlawful seizure. *Id.* at 616 (citing *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir. 1995)).

Ms. Johnson's argument, liberally construed, is insufficient to meet her burden. *Bledsoe* was decided on November 15, 2022, which is after the events at issue allegedly took place on either November 5, 2021 or November 5, 2022.[3] Accordingly, *Bledsoe* is not clearly established authority that would have been available to guide Ms. Shelton-Denley's actions. *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1200 (10th Cir. 2009) ("Because the law must be clearly established at the time of the incident, cases published before the incident govern our analysis.").

Even if the events at issue occurred after November 15, 2022, Ms. Johnson relies on a "general statement of the law" which is "not sufficient to show that the law was clearly established." *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably

---

[3] The Complaint first states the events at issue occurred on November 5, 2021, but then states they occurred on November 5, 2022. [Doc. No. 1] ¶¶ 13, 23. Either way, pertinent events occurred before *Bledsoe* was published.

in the particular circumstances that he or she faced.'" (citations omitted)).[4]

Liberally construing Ms. Johnson's argument, the Court finds the same is true for her reference to *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012), found in her quote from *Bledsoe*. Resp. [Doc. No. 14] at 3. There, the Eighth Circuit noted four other Circuits "have recognized the duty to intervene outside of the excessive force context," while the Eleventh Circuit declined to do so. *Id.* at 360. This is a general statement of law, untethered to the legal claim or facts at issue here, and is therefore insufficient. *Gillen*, 761 F.3d at 1106. Additionally, the court held that the duty to intervene outside the excessive force context was not clearly established where "the federal circuits disagree" on the topic. *Livers*, 700 F.3d at 360. As such, the reference to *Livers* does not advance Ms. Johnson's argument in this case.[5]

Finally, although only incidentally referenced by Ms. Johnson, the Court notes her citation to *Reid v. Wren* fares no better. *See Green v. Post*, 574 F.3d 1294, 1305 n. 10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."); *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, . . . even if the facts were closer, provides little

---

[4] Moreover, the facts of *Bledsoe* are in no way "materially similar." *Apodaca*, 864 F.3d at 1076. It involved allegations of a truly extraordinary plot by the family of the plaintiff, an attorney, and multiple law enforcement officers to frame the plaintiff for the murder of his sister-in-law, all to avoid the conviction of the plaintiff's brother, who actually committed the murder. *Bledsoe*, 53 F.3d at 595-601. None of the allegations against any defendant in *Bledsoe* relate to an individual who merely booked the plaintiff in jail after an unlawful arrest where the subject defendant was not present. *See id.*

[5] As with *Bledsoe*, *Livers* involved unique facts unlike anything alleged here: the subject arrests were allegedly without probable cause because they were based on a "fundamentally flawed" polygraph examination and a coerced confession. *See id.* at 357-58.

support for the notion that the law is clearly established.").[6]  Accordingly, Ms. Johnson's Fourth Amendment claim against Ms. Shelton-Denley is barred by qualified immunity.[7]

### B. Excessive Force

The Court finds Ms. Johnson did not assert a claim for excessive force against Ms. Shelton-Denley in the first place: she specifically states that claim is based on "officers on the scene us[ing] excessive and unreasonable force", but nothing in any of her factual allegations suggests Ms. Shelton-Denley is a police officer, that she was "on the scene," or that she used any measure of force at any time.  *See* Compl. [Doc. No. 1] ¶¶ 13-20, 30.  Accordingly, Ms. Johnson failed to state a claim for excessive force against Ms. Shelton-Denley.[8]

---

[6] In any event, *Reid* provides no meaningful comparison from a factual standpoint: the subject of the unlawful seizure claim was a horse the plaintiff owned, rather than an unlawful arrest of a person, and the officers against whom the failure to intervene claim was asserted were actually present at the scene when the seizure occurred.  1995 WL 339401 at *1-2.

[7] As a final matter, Ms. Johnson asserts that the officers failed to read her *Miranda* rights—but the connection between that allegation and her claim against Ms. Shelton-Denley for failure to intervene in an unlawful seizure is entirely unclear.  *See* Resp. [Doc. No. 14] at 5.  Ms. Johnson does not assert a due process claim, and she includes no allegations regarding any self-incriminating statements, let alone their use in criminal proceedings.  *See* Compl. [Doc. No. 1] ¶¶ 16-30.  Accordingly, this reference to *Miranda* does not advance her cause as to the Fourth Amendment claim, nor does it otherwise support a cause of action under § 1983.  *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (holding a § 1983 claim alleging compelled self-incrimination failed where the plaintiff "was never charged with a crime, and his answers were never used against him in any criminal prosecution.").

[8] Where a plaintiff sues multiple defendants, the complaint should "explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's actions harmed him or her; and, what specific right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).  In § 1983 actions, "it is particularly important" that the plaintiff "make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations. . ." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal quotation marks and citation omitted).

In her Response, Ms. Johnson suggests she did intend to assert such a claim, arguing Ms. Shelton-Denley had a duty to intervene because she: (1) saw Ms. Johnson's injuries when she arrived at the police department; and (2) knew about the excessive force taking place because she was a dispatcher on duty when the events took place. [Doc. No. 14] at 4. But none of these factual allegations are included in the Complaint, and nothing about the Complaint suggests she did intend to assert such a claim. *See Gee*, 627 F.3d at 1186 ("[T]he sufficiency of a complaint must rest on its contents alone.").

Even if these facts were properly alleged, they would only satisfy the knowledge component of the duty to intervene analysis set forth in *Bledsoe*, 53 F.4th at 616. Ms. Johnson's claim still fails because it is clear from her allegations that Ms. Shelton-Denley was not at the scene where the excessive force took place, therefore she did not have "a realistic opportunity to intervene[.]" *See id.*; *see also Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). Accordingly, Ms. Johnson has failed to assert a claim for excessive force against Ms. Shelton-Denley.

## V.    Conclusion

For the reasons set forth above, Defendant Leslie Shelton-Denley's Motion to Dismiss [Doc. No. 13] is GRANTED. Plaintiff Amy Johnson's claims against Ms. Shelton-Denley are DISMISSED without prejudice.

IT IS SO ORDERED this 7th day of August, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE